WidliaMS, Judge,
delivered the opinion:
The basis of the plaintiff’s claim herein, is that it purchased from the defendant at an auction sale of surplus Army products held at Port Newark, N. J., on September 12, 1922, certain specific and ascertained lots of surplus Army blankets, and that the defendant, instead of delivering to the plaintiff the specific lots of blankets purchased, delivered blankets from other and different lots of an inferior quality. The difference in the value of the blankets claimed to have been purchased and the blankets actually delivered is alleged to be $199,310.21, which amount the plaintiff seeks to recover.
The blankets advertised by the defendant for sale, and which were purchased by the plaintiff, are described in a supplementary catalogue issued by the defendant prior to the sale as follows:
“ Catalogue. — The following additional quartermaster property located at Army supply base, Brooklyn, N. Y., will be offered for sale at the Port Newark auction sale on *269 September 12, 1922, subject to the terms and conditions as listed in the original catalogue for that sale.

Prior to the sale, agents of the plaintiff visited building “ A ” at the Army base, Brooklyn, N. Y., where the blankets were stored, and inspected them. These agents reported to the plaintiff that the number of blankets in lots 280, 281, 282, and 283 were in the neighborhood of 400,000, and that from 25 per cent to 30 per cent of the lots consisted of bales of new or unused blankets. The plaintiff contends that the representations of its agents who inspected said lots of blankets were true and that such lots at the time they were examined and inspected by its agents did in fact contain from 25 per cent to 30 per cent of new or unused blankets, and that it relied upon such representations in submitting its bid. No bales of new or unused blankets were delivered, therefore plaintiff contends the defendant did not deliver lots 280, 281, 282, and 283, but that it removed the bales of new or unused blankets from the said lots and substituted other and different blankets of an inferior quality which had not been shown to plaintiff’s representatives, and which had not been inspected by them, and which were not a part of the lots upon which plaintiff had bid.
The court’s findings of fact do not sustain the contention of the plaintiff. Lots 280, 281, 282, and 283, as advertised by the defendant and purchased by the plaintiff were all used blankets and did not contain bales of new or unused blankets. The blankets delivered to the plaintiff were out of the identical lots purchased, and the defendant did not remove bales of new blankets from the said lots and substitute other and inferior blankets from other lots not shown to the plaintiff’s agents who inspected the said blankets prior to the sale.
*270 That bales of new or unused blankets were stored in warehouse “A,” in sections adjacent to or in close proximity to lots 280, 281, 282, and 283, is clearly shown by the evidence and is stated as a fact in the findings. No doubt the agents of the plaintiff who made the inspection of the blankets advertised for sale saw these new bales of blankets and reported to the plaintiff that they were a part of the advertised lots. Plaintiff’s agent, Peters, who made an inspection and upon whose report the plaintiff largely relied, says that lots 280, 281, 282, and 283, at the time he inspected them were stored in sections 200 to 214 of Warehouse “A,” or “ somewhere in that neighborhood.” Agent Marcus, who also made an inspection, says they were stored “ somewhere around 204 to 214, something like that.” These statements are so indefinite and are so at variance with the testimony of other witnesses that they can not be accepted as having much weight in fixing the definite location of the blankets in the warehouse. If plaintiff’s agents examined bales of blankets in the sections where they say the lots in question were located it is obvious they inspected a great number of blankets which did not constitute a part of the lots advertised for sale, which lots the findings show were stored in sections 206, 208, and 210 of the warehouse.
The bales of new blankets stored adjacent to or near the aforesaid lots were 5-pound blankets, of coarse texture, made on a carpet loom. They were advertised and sold at a date subsequent to the sale of the blankets involved in this suit, at a price of $3.12 per blanket. These new blankets were not a part of lots 280 to 283, inclusive.
Prior to the date of the sale at Port Newark, 20 bales of blankets from the lots advertised, being five bales from each lot, were taken from the warehouse at Brooklyn and sent to Port Newark and displayed as samples of the blankets offered for sale. There were no bales of new or unused blankets among these 20 bales. These blankets were on display prior to and on the day of the sale at Port Newark and were examined by the plaintiff. It is an interesting and significant circumstance that plaintiff’s agents, Peters and Marcus, who had made the inspection of the blankets *271 in question at the warehouse in Brooklyn, and had reported to plaintiff that from 25 per cent to 30 per cent of lots 280 to 283, inclusive, consisted of bales of new or unused blankets, were present at the sale at Port Newark, saw the 20 sample bales of blankets on display, none of which were bales of new blankets, and did not call attention to the fact that such blankets were not representative samples of the blankets they had been shown and had inspected in the warehouse at Brooklyn. If 25 per cent or 30 per cent of the blankets in lots 280 to 283, inclusive, consisted of bales of new blankets, at least five or six of the 20 bales selected out of such lots for display at Port Newark would, under the law of averages, have been new blankets. Yet the plaintiff’s agents made no inquiry as to why bales of new blankets were not included among those on display. It is most astonishing that the plaintiff would rely upon the statements of its agents that from 25 per cent to 30 per cent of the four lots of blankets offered for sale were bales of new or unused blankets, and make a bid predicated on such statements, in face of the fact that before its very eyes at the time the bid was submitted were 20 bales of blankets selected from the lots in question as representative samples, not a single bale of which was new or unused blankets.
Among the terms and conditions of the sale, as stated in the supplemental catalogue in which the blankets in question were advertised for sale appears the following:
“ In addition to the inspection of the lots of property at their places of storage, samples may be seen in the auction room at Port Newark, beginning on Wednesday, September 5, 1922, and daily thereafter (Sunday excepted) to September 12, 1922, between the hours of 9 a. m. and 3 p. m. (Saturday to 12 noon). No inspection of samples during sale.”
The plaintiff, when it first made complaint as to the character of the blankets being delivered by the defendant, did not base its complaint on the ground that it was not receiving in part new or unused blankets. At the time this complaint was made about 75,000 blankets had been delivered. The grounds upon which complaint was made are formally presented in two letters dated October 4, 1922, addressed to the quartermaster intermediate depot, Brooklyn, *272 N. Y., which letters are set out in full in Finding IX. It was claimed that a large part of the blankets received contained holes and could not properly be classified as class B. This complaint is answered by the fact that the defendant did not represent the four lots of blankets purchased by the plaintiff as being class B blankets. Each of the four lots were advertised as “ wool O. D. used ” blankets and were sold by the defendant under the specific condition that:
“All property listed in this catalogue at said auction will be sold ‘ as is ’ and ‘ where is,’ without warranty or guaranty as to quality, character, condition, size, weight, or kind, or that the same is in condition or fit to be used for the purpose for which it was originally intended, and no claims for any allowances upon any of the grounds aforesaid will be considered after the property is knocked down to a bidder by the auctioneer.
* * * * * * *
“ Claims. — No claims will be entertained except in shortage in delivery to the authorized representative of the purchaser.”
A further condition of the sale stated in the catalogue was:
“ Should the actual quantity of any article available for delivery prove to be less or greater than the quantity of such articles as shown in this catalogue, such discrepancy will not invalidate the sale, nor be considered the basis of a claim. The purchaser will be required to pay on the basis of the purchase price for what he actually receives.”
The total estimated number of blankets in the four lots was 316,955. The plaintiff paid for and accepted delivery of 335,555 and refused to accept delivery of the remaining 11,400. The 335,555 blankets delivered were all taken from the four lots purchased by the plaintiff.
Having refused to accept full delivery of the blankets awarded to it, which the defendant was ready and able to make, the plaintiff can make no claim on account of shortage of delivery.
The plaintiff purchased the blankets in question “ as is ” and “ where is,” without warranty or guaranty as to their character, quality, or condition, after it had been afforded full opportunity to examine and inspect such blankets, and *273 had inspected them, both at the Army base in Brooklyn, where the four lots of blankets were stored, and at Port Newark, where 20 bales out of the four lots were displayed as samples. It can not recover damages because the blankets when received were not of the quality expected. William E. Iselin et al. v. United States, 60 C. Cls. 255, affirmed 271 U. S. 136; Maguire c& Co., Inc., v. United States, 59 C. Cls. 575.
The plaintiff’s petition should be dismissed. It is so ordered.
LittletoN, Judge; GtkeeN, Judge; and Booth, OMef Justice, concur.
Whaley, Judge, took no part in the decision of this case.